**E-FILED**
Friday, 23 June, 2006  11:44:28 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 03-2091 |
| TERESA LYNN DAVIS, individually and as guardian of the minors Jacquilyne L. Davis and Sean M. Davis, LEONARD FAMILY TRUST, SUSAN R. DAVIS, individually and as Trustee of the Leonard Family Trust, LEONARD C. DAVIS III, KIMBERLY JO DAVIS, JACQUILYNE L. DAVIS, and SEAN M. DAVIS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

The plaintiff, Life Insurance Company of North America ("the insurer") filed this interpleader action to determine the rightful claimants to life insurance proceeds. The insurer deposited the stake of $40,000 with the registry of the court and was discharged from this case.

The facts are undisputed. The insured, Leonard C. Davis, Jr. ("the decedent"), was married at least three times. Defendants Leonard C. Davis III ("Leonard") and Kimberly Jo Davis ("Kimberly") were born as a result of a relationship prior to the decedent's marriage to his second wife, defendant Teresa Lynn Davis ("Teresa"), in 1984. Teresa and the decedent had two children, Jacquilyne Lee Davis and Sean Michael Davis (collectively, "Teresa's children"). Teresa and the decedent divorced in 1992. The decedent later married defendant Susan R. Davis ("Susan"); they remained married until his death in 2002.

When Teresa and the decedent divorced, they entered into Marital Settlement Agreement ("MSA"), which was incorporated into the Judgment for Dissolution of the marriage. The MSA states, in relevant part,

## LIFE INSURANCE
The [decedent] shall continue to provide life insurance on his life for the benefit of [Teresa's] children that is available to him through his employment. The [decedent] shall name another party as trustee over life insurance benefits for the benefit of [Teresa's] children.

1

At the time of his divorce, and until his death, the decedent was employed by Firestone Tire and Rubber Company ("Firestone"). When Teresa and the decedent divorced, his life insurance benefit was $23,000. The benefit increased to $30,000 in 1994, and to $35,000 in 1997. The benefit increased again, to $40,000, in 2000. Firestone provided the insurance coverage without charge.[1]

In 2000, the decedent made Susan the sole beneficiary of his Firestone life insurance policy, contrary to the MSA. Teresa learned of the change and filed a petition for a rule to show cause. On March 13, 2002, the Tazewell County Circuit Court entered the following:

> 1. Court finds [the decedent] has removed children as beneficiary in violation of court order.
> 2. [The decedent] shall appear before this Court on March 27, 2002 at 1:30 p.m.
> 3. [The decedent] shall provide a copy of his life insurance policy to the Court and [Teresa] showing . . . [Teresa's] children, . . . as the beneficiaries of said life insurance policy.

One day before the decedent was scheduled to appear in court, a motion to continue was filed. Over the next few months, several notices of hearing were issued but the docket does not reflect that a hearing was ever held.

On April 23, 2002, the decedent executed his last will and testament. Among other things, the will incorporated provisions for the creation of the Leonard Davis Family Trust, with Teresa's children as beneficiaries and Susan as trustee. The trust was to be funded with "my life insurance proceeds from my Bridgestone/Firestone life insurance[.]"

Then on May 2, 2002, the decedent executed a Life Insurance Beneficiary Designation for his Firestone life insurance policy. He divided the proceeds as follows: $12,000 to Susan, $7,000 to Leonard,[2] $7,000 to Kimberly, and $14,000 to the Leonard C. Davis Family Trust, Susan R. Davis, Trustee.

The decedent passed away on September 26, 2002. The final entry on the circuit court's docket sheet is dated sometime in late 2002: "Parties present by counsel. Defendant is deceased. Cause continued – ".

<u>ANALYSIS</u>

The material facts are not in dispute; nonetheless, Kimberly and Leonard had not entered an appearance by the dispositive motion deadline and counsel for the other defendants allowed

---

[1] The decedent's life insurance beneficiary designation indicates that the policy was for "Basic Life and Accidental Death and Dismemberment (Provided Free of charge by [Firestone]").

[2] Leonard was personally served with the complaint but never appeared in this action.

the dispositive motion deadline to pass without filing a motion for summary judgment. After determining that there was no dispute of material fact, the court ordered the parties to file stipulations of fact so the outcome of this case could be decided as a matter of law. Teresa and Susan then filed a stipulation of undisputed facts. Each argues that the undisputed facts entitle her to judgment in her favor, and against the other; both women urge the court to default and dismiss Kimberly and Leonard. Kimberly filed a document titled "Stipulation of Facts," but the assertions are argument and not fact. Consequently, the court will proceed as if Susan, Teresa and Kimberly have filed cross-motions for summary judgment. *See* Fed. R. Civ. P. 56.

### I.  The documents
The court's determination rests on three documents: the MSA, the will, and the beneficiary designation. At the outset, the court notes that of the three claimants, only Kimberly proposes to follow any one of the documents in its entirety (although she attributes her proposed distribution to the wrong document).

### 1.  The MSA
"When interpreting the provisions of a divorce judgment, the court seeks to give effect to the apparent intent of the trial judge who approved the settlement and the interpretation of the parties[.]" *In re Knazze*, 632 N.E.2d 162, 165 (Ill. App. Ct. 1994). The judgment of dissolution incorporates the terms of the MSA. The life insurance provision of the MSA states,

> The [decedent] shall continue to provide life insurance on his life for the benefit of [Teresa'] children that is available to him through his employment. The [decedent] shall name another party as trustee over life insurance benefits for the benefit of [Teresa's] children.

The life insurance provision is as noteworthy for what it does not say as for what it does. The amount of life insurance is not specified, and the details of the trust are almost nonexistent. However, it is apparent that a trust was to be formed; it was to be funded with the proceeds of life insurance that the decedent obtained through his employment; and the decedent was to name "another party" – someone other than Teresa – as trustee.

### 2.  The will
After the Tazewell County Circuit Court ruled the decedent to show cause why he should not be found in violation of a court order, he executed his last will and testament.

Among other things, the decedent's will filled in the blanks left by the MSA. Article Four of the will established the Leonard Davis Family Trust, and named Susan as trustee. The trust was to be funded by the decedent's "life insurance proceeds from [his] Bridgestone/Firestone life insurance" with the funds to be placed into "income-producing or interest-bearing investments." The income or interest, along with whatever principal was necessary, was to be for the "regular maintenance, support and education of my children, Jacqueline [sic] Lee Davis and Sean Michael Davis [Teresa's children]." The trust was to continue in full force and effect "until the youngest [Sean] attains the age of twenty-one (21) years." Then the trust would be terminated, with the trust *res* and any undistributed accumulated

interest and income paid in equal shares to Teresa's children.

The will was consistent with, and supplemented, the MSA.  As required by the MSA, he named "another party" – Susan – as trustee.

### 3.  The beneficiary designation

Less than two weeks after executing the will, the decedent completed a new beneficiary designation on his Firestone life insurance.  The beneficiary designation added a new wrinkle to the situation:  it allocated only part of the life insurance proceeds to the trust.  Instead of designating the testamentary trust as the sole beneficiary of the $40,000 proceeds, he split the proceeds between Susan ($12,000), Kimberly ($7,000), Leonard ($7,000), and the testamentary trust ($14,000).

## II.  The claimants' proposed distributions

Susan moves the court to award $23,000 (the benefit in effect at the time of the divorce) in trust to Teresa's children; default and dismiss Kimberly and Leonard from this action; and award the remaining $17,000 to Susan.  Her proposed distribution is unsupported by the language of any of the three documents.

Teresa moves the court to award the entire $40,000 to her children with immediate payment of coequal shares to them.  She urges the court to disregard the MSA's express language that the proceeds be paid into a trust.[3]  Teresa's proposed distribution is also unsupported by the documents, each of which specifies that the life insurance proceeds are to be paid into a trust to benefit Teresa's children.

---

[3] Teresa argues that because Susan is an adverse claimant to the funds, it is not in the children's interest to place the funds in trust with Susan as trustee.  Teresa's concern is valid, but ordering immediate payment of the funds to the children ignores an important part of the MSA – that the funds be paid into a trust.

Consequently, the court will require Susan to post a surety bond despite the decedent's direction to the contrary.  "Even though the settlor has excused the trustee from giving security, the court may require it. . . . The prime concern . . . is to safeguard the trust fund and to protect the interests of the beneficial owners. A most effective way to afford such protection to an apprehensive beneficiary is to require the trustee to give bond."  *Shaull v. United States*, 161 F.2d 891, 896 (D.C. Cir. 1947) (*citing* 1 Bogert, *Trusts and Trustees* § 151) ("Regardless of any direction given by the settlor and the statutory requirements in these matters, there is always the inherent power of the court of equity to do whatever is necessary to protect the interests of the trust beneficiaries. . . . Thus the court at any time may order the giving of a bond or oath by the trustee[.]").  *See also* Restatement (Third) of Trusts § 34 cmt. (a)(1) (2006) (a court may order a trustee to give bond or secure performance if necessary to protect the interests of the beneficiaries).

4

Kimberly argues that the court should distribute the insurance proceeds as specified in the decedent's will. However, the distribution she supports is consistent with the decedent's life insurance beneficiary designation, not his will. According to the terms of the will, Kimberly and Leonard stood to inherit nothing from the decedent unless Susan failed to outlive the decedent by thirty days.

The court's first inquiry is to determine which of the three documents controls. "When marital settlement agreements require an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policies against any other named beneficiary except one with a superior equitable right." *Schwass v. Schwass*, 467 N.E.2d 957, 959 (Ill. App. Ct. 1984). In this case, the MSA named Teresa's children as beneficiaries through a trust to be established for their benefit. Neither Susan nor Kimberly has apprised the court of circumstances giving rise to a superior equitable right.[4] The MSA is controlling, and the will is perfectly consistent with the MSA. The documents require payment of life insurance proceeds into a trust to be used for the children's benefit.

The court's next step is to determine whether the trust should receive part or all of the proceeds. Susan points out that the MSA did not specify a particular amount of proceeds to be placed in trust, and neither did the will. But when no dollar amount is specified and group insurance benefits increase over time, the "beneficiaries of a policy generally are entitled to the entire proceeds" unless something in the record suggests otherwise. *Schwass*, 467 N.E.2d at 961.

---

[4]In *Brunnenmeyer v. Massachusetts Mut. Life Ins. Co.*, 384 N.E.2d 446, 448 (Ill. App. Ct. 1979) the court rejected the second wife's claim that she had a superior equitable right to life insurance proceeds despite the MSA from the decedent's first marriage requiring that he name his children as beneficiaries. The second wife argued that the insured had been ill for a long time, had required costly care and was destitute at the time of his death. *Brunnenmeyer*, 384 N.E.2d at 448. The second wife also had limited financial resources and other outstanding bills, and the children of the first marriage had other resources. *Brunnenmeyer*, 384 N.E.2d at 448. The court found these factors insufficient to state a superior right to the proceeds. *Brunnenmeyer*, 384 N.E.2d at 448.

In *Schwass*, the decedent and his second wife owned a heavily-mortgaged home in joint tenancy. *Schwass*, 467 N.E.2d at 959. The decedent told his second wife she was the beneficiary of his life insurance policies and, relying upon this information, she did not obtain additional insurance. *Schwass*, 467 N.E.2d at 959. After his death, she learned that the MSA from his first marriage required the decedent to name his children as beneficiaries. *Schwass*, 467 N.E.2d at 959. The second wife was unable to make the mortgage payments and had to pay certain bills related to her husband's death. *Schwass*, 467 N.E.2d at 959. The court found these circumstances even less compelling that those rejected in *Bruennenmeyer*. *Schwass*, 467 N.E.2d at 959.

Susan argues that the MSA suggests the decedent's obligations were limited to the facts existing at the time of the divorce. For example, the decedent was obligated to cover the children under his Firestone health insurance policy, with the issue reserved in the event he was no longer employed at Firestone. And child support was to be reduced to a specific amount if the decedent was laid off. Susan contends that the MSA impliedly limited the trust to the life insurance benefit existing at the time of the divorce – $23,000 – and the remaining $17,000 should go to her.

Susan's arguments are unpersuasive. First, the health insurance obligation was reserved, not terminated, if the decedent changed jobs. Had the decedent taken another job with similar benefits, it is highly speculative that the circuit court would have ended the decedent's obligation to provide health insurance for his children. Also, the automatic reduction in child support payments reflects the simple reality that if laid off from Firestone,[5] the decedent would have been unable to pay child support at the level established by the court. Lay-offs at Firestone were not unusual. The provision suggests the decedent was concerned about his ability to pay child support if laid off, and the parties wanted to avoid the expense and uncertainty of repeated trips to court to modify child support.

Unlike the provisions for health insurance coverage and child support, the provision for life insurance coverage was not limited, nor was it automatically reduced to an established level if coverage increased, nor was it reserved for possible modification. Read as a whole, the two sections of the MSA cited by Susan support the contention that the trust was to be funded with life insurance benefits that increased over time.

Susan also argues that the court order did not require Teresa's children to be made the "sole" beneficiaries; she contends that the decedent was free to add other beneficiaries without violating the court order. This is also the essence of Kimberly's argument. But to award a share of the benefits to Susan and Kimberly would violate the general rule that "beneficiaries of a policy generally are entitled to the *entire* proceeds." *Schwass*, 467 N.E.2d at 961 (emphasis added). For this reason, the May 2, 2002, beneficiary designation cannot be enforced. Teresa's children must receive the entire life insurance benefit of $40,000.

<u>III.  Payment of the proceeds</u>

As a final matter, the court must resolve how the proceeds should be paid. Teresa has asked the court to impose a constructive trust over the life insurance proceeds. A constructive trust is an equitable remedy to restore wrongfully appropriated property to the rightful owner. *Jackson v. Callan Publ., Inc.*, 826 N.E.2d 413, 423 (Ill. App. Ct. 2005). Where, as here, the funds are held in the court's registry account, there is no need to impose a constructive trust.

---

[5]  The MSA links the reduced child support only to the decedent's lay-off, and not to any other change in employment (for example, termination for cause). In addition, the reduction applied to lay-off in general, not lay-off from Firestone.

Teresa further asks the court to order payment of the funds to her children in immediate co-equal shares, rather than to the trust. However, all three of the documents are consistent – the funds are to be placed in trust for the benefit of Teresa's children. The will provides additional details – the money is to be used for the "regular maintenance, support and education of" Teresa's children, and the trust will continue in full force and effect "until the youngest attains the age of twenty-one (21) years." Then the trust is to be terminated, with the trust *res* and any undistributed accumulated interest and income distributed in co-equal shares to Teresa's children. There is no provision for outright payment of co-equal shares before Sean's twenty-first birthday.

<u>CONCLUSION</u>

For the foregoing reasons, the court awards the life insurance proceeds of $40,000, plus interest accrued through the court's registry account, to the Leonard Davis Family Trust. Within thirty days of the date of this order, Susan, as trustee of the Leonard Davis Family Trust, shall post a surety bond with corporate sureties acceptable to the court in the principal sum of $40,000. Once the court has determined that adequate bond has been posted, the court will issue a supplemental order to effectuate a transfer of funds from the court's registry account to the trust.

The parties shall bear their own costs.[6]

Entered this 23rd day of June, 2006.

**s\Harold A. Baker**

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[6] "The law is well settled that trustees cannot reimburse themselves from the trust estate for their attorney fees, unless those fees were incurred in the management and preservation of the trust estate. They cannot charge for fees incurred in litigation hostile to the estate or hostile to the *cestui*." *Ellis v. King*, 83 N.E.2d 367, 371 (Ill. App. Ct. 1949) (internal citations omitted). In this case, Susan was named individually and as trustee of the Leonard Davis Family Trust. She was represented in both capacities by one attorney who advocated only on Susan's behalf – a position that was hostile to the trust corpus and the beneficiaries. Accordingly, Susan, individually, shall bear her attorney costs and fees.